IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAUL PARKER,

                Plaintiff,

v.                                                          OPINION and ORDER

AUDRA ROBERTS and EDWARD                                  21-cv-603-jdp
ANDRUCZYK,

                Defendants.

---

In this civil rights case, plaintiff Paul Parker alleges that defendant Audra Roberts, a nurse at the Mendota Mental Health Institute (MMHI), sexually harassed and abused him while he was involuntarily committed at MMHI in late 2018 and early 2019. Parker also contends that Roberts's supervisor at MMHI, defendant Edward Andruczyk, either consented to or was deliberately indifferent to the abuse, in violation of Parker's rights under the Equal Protection Clause. The court previously denied Andruczyk's motion to dismiss for failure to state a claim. Dkt. 19.

Defendants now move to dismiss the case under the fugitive disentitlement doctrine. Dkt. 23. They contend that Parker became a fugitive from justice when, after missing two meetings with his probation officer in Wisconsin, an apprehension request was issued for him and he moved to Louisiana. They contend that Parker's fugitive status, and the practical challenges it presents, warrant dismissing the action. Parker contends that he is not a fugitive for the purposes of the doctrine, and regardless, that the case should proceed.

The court will deny the motion. Even assuming Parker is a fugitive for the purposes of the disentitlement doctrine (and it is not clear that he is), defendants have not shown that

there are practical impediments to litigating this case sufficient to warrant the extreme sanction of dismissal at this stage.

BACKGOUND

The parties agree on the following facts. In December 2021, Parker was placed on probation related to two criminal cases in Rock County Circuit Court. Among other things, Parker's rules of supervision require him to inform his probation agent of his whereabouts and report to in-person appointments, as directed. After missing two scheduled appointments with his agent, an apprehension request was issued for Parker's arrest in late January 2022. Four months later, in May, Parker called his agent and asked what he needed to do to clear the apprehension request. The agent told him to report in person, but Parker said that he was no longer in Wisconsin, having relocated to Louisiana. At the time defendants filed their motion, Parker had not reported to his agent, and the apprehension request remained in effect.

All of this, defendants contend, renders Parker a fugitive who is "entirely beyond judicial control." Dkt. 24, at 4. They now move for dismissal on that basis. Parker, for his part, argues that he is not a fugitive, and regardless, the case can proceed because he is not beyond judicial control. For support he submits a declaration from his attorney in which the attorney says he has "periodic telephone contact" with Parker, that Parker is in Louisiana for work, and that Parker lacks the financial means to travel to Wisconsin and will lose his job if he misses work to return to Wisconsin. Dkt. 27, ¶¶ 2, 4. Parker's counsel says that Parker is willing to be deposed remotely. Dkt. 27, ¶ 3.

ANALYSIS

The fugitive disentitlement doctrine is a discretionary device that allows a court to dismiss an appeal or action by or against an individual who is a "fugitive[] from justice." *Gutierrez-Almazan v. Gonzalez*, 453 F.3d 956, 957 (7th Cir. 2006). The rule rests in part on practical concerns and in part on the court's interest in preserving its own authority and dignity. *Ortega-Rodriguez v. United States*, 507 U.S. 234, 240 (1993); *Gutierrez-Almazan*, 453 F.3d at 957. In deciding whether to apply the doctrine, courts in this circuit focus primarily on pragmatic considerations—the inquiry centers on whether allowing the case to proceed will unfairly prejudice adversaries or risk making enforcement of an adverse judgment impossible. *Sarlund v. Anderson*, 205 F.3d 973, 974–75 (7th Cir. 2000); *Gutierrez-Almazan*, 453 F.3d at 957. Recognizing that outright dismissal is a blunt and severe sanction, the Supreme Court has cautioned that dismissal is appropriate only when alternative means of protecting adversaries' interests are unavailable. *See Degen v. United States*, 517 U.S. 820, 827–29 (1996); *see also Gutierrez-Almazan*, 453 F.3d at 957 (citing *Degen* for the notion that fugitive dismissal is "too blunt an instrument for deterring other[s] . . . from absconding and preserving the court's authority and dignity").

A threshold question is whether the person in question is a fugitive. Existing Seventh Circuit precedent does not provide a clear definition of a "fugitive" for the purposes of the doctrine. *See United States v. Kashamu*, 656 F. Supp. 2d 863, 867 (N.D. Ill. 2009) (applying definition from the Second Circuit), *aff'd* 656 F.3d 679 (7th Cir. 2011). The parties dispute whether Parker is one, and offer competing definitions that they say Parker does, or does not, meet. Parker contends that he is not a fugitive because he is not facing criminal charges and he moved to Louisiana for work rather than to avoid the authorities; defendants argue that an

3

apprehension request is similar to an arrest warrant and that Parker's reasons for violating the terms of his probation are immaterial. But the court does not need to determine whether Parker is a fugitive to decide defendants' motion. *See United States v. Bokhari*, 757 F.3d 664, 672 (7th Cir. 2014) (declining to decide whether individual was a fugitive because "[i]dentifying fugitives for the purposes of the disentitlement doctrine can present complicated legal and factual questions" and the case could be resolved on other grounds). Even if the court assumes that Parker is a fugitive, his situation does not appear to present such severe practical impediments to litigating the case that dismissal is warranted.

As already noted, the primary question in deciding whether to dismiss a fugitive's case is whether dismissal is necessary to prevent prejudice to defendants, or to avoid an unenforceable judgment. *Degen*, 517 U.S. at 825–26. Defendants analogize to *Sarlund v. Anderson*, arguing that like the plaintiff in that case, Parker's "whereabouts are unknown" and he is "entirely beyond judicial control." 205 F.3d at 975. This, they argue, will make it impossible to depose Parker in person or make him pay costs (should he lose) or attorney fees (should he lose, and the suit be judged sanctionably frivolous). But there are important distinctions between this case and *Sarlund*. First, Parker's whereabouts are not unknown. Although Parker is no longer in Wisconsin, his attorney states that Parker is in Louisiana for work and that they are in periodic contact. Counsel doesn't explain what "periodic" means, but defendants offered no evidence of their own to show that Parker is out of reach. As a result, the risk here appears lower than in *Sarlund* that Parker will fail to meet his discovery obligations or satisfy a judgment against him. For instance, Parker's attorney stated that Parker is willing to be deposed remotely—something that was presumably not an option in *Sarlund* for both technological and practical reasons—and defendants have not explained why a remote

4

deposition would prejudice them. Likewise, defendants have not explained why Parker's presence in Louisiana makes enforcing a judgment against him more difficult—at least no more than it would any other party who resides out of state.

Second, other practical factors that the *Sarlund* court said favored dismissal are not present here. There, the defendants were 28 law enforcement individuals who were responsible for the prosecution that led the plaintiff to become a fugitive. *Sarlund*, 205 F.3d at 974–75. The large number of defendants, their involvement in the plaintiff's prosecution, and the court's conclusion that it was "more than likel[y] that the suit [wa]s completely frivolous" all made it likely that the plaintiff would use the litigation to harass the defendants. *Id.* at 974–75. Here, Parker has sued only two individuals who have no apparent connection to his criminal convictions. And although the court takes no stance now on the merit of Parker's claims, the court found them sufficient to survive a Rule 12(b)(6) motion to dismiss as to defendant Andruczyk. Dkt. 19. The risk that Parker is using this case to abuse the litigation process therefore seems low.

To be sure, the vague language in counsel's declaration and Parker's apparent inability to come to Wisconsin both raise questions about Parker's ability to meet his discovery obligations. Should he fail to appear for a deposition (or one cannot be arranged due to his absence), or otherwise violate his duties as a litigant, then dismissal may become appropriate. *See, e.g.*, *Colorado v. Platteville Police Dept.*, No. 07-cv-486-bbc, 2008 WL 3669079 (W.D. Wis. Apr. 21, 2008) (dismissing case under fugitive disentitlement doctrine after plaintiff had failed to appear at his scheduled deposition, his attorney said she did not know where he was, and he did not file a response to defendants' summary judgment motion). At this stage, though,

even assuming Parker is a fugitive, it would be premature to impose such a blunt and severe sanction on him. *See Degen*, 517 U.S. at 827–28.

The court must also consider factors relating to protecting the court's dignity, the deterrent effect of dismissal, and other equitable concerns, although these factors are less important than the practical considerations. *See Sarlund*, 205 F.3d at 974; *Ortega-Rodriguez*, 507 U.S. at 246–49. These factors do not weigh strongly in favor of either party. At most, they weigh slightly in favor of dismissal, which is not enough to overcome the practical considerations that counsel in favor of keeping the case.

As for the court's dignity, defendants argue that Parker's state court probation violation demonstrates a "disrespect for the legal process" severe enough to preclude him from pursuing his sex discrimination claims in this court. Dkt. 24, at 4. But Parker's actions are not so disrespectful that they are grounds for dismissing the case. The Supreme Court's decision in *Ortega-Rodriguez* is instructive here. In that case, the Court reversed the Eleventh Circuit's dismissal of the criminal appeal of a man who had been a fugitive for a time during district court proceedings but was apprehended (and so no longer a fugitive) when he filed his appeal. 507 U.S. 234. The Court explained that the "contemptuous disrespect" manifested by the man's flight was directed at the district court, not the court of appeals, so it was up to the district court to determine an appropriate sanction for him (which it had, by imposing a stiffer sentence after the man was apprehended). *Id.* at 247–48. The fugitive disentitlement doctrine, the Court explained, should not be used as a tool "to sanction by dismissal *any* conduct that exhibited disrespect for *any* aspect of the judicial system, even where such conduct has no connection" to the case before the court. *Id.* at 246 (emphasis added). Although the facts of *Ortega-Rodriguez* differ from those here, the court sees parallels—Parker's probation violation

certainly exhibited disrespect for the judicial system, but that disrespect was mostly directed at the state court that convicted him, not this court.

And as for deterrence and equity, although dismissing the case might have some marginal deterrent effect on individuals facing probation, it would also risk disposing of Parker's potentially meritorious claims of sexual harassment and abuse by state employees. These factors are a wash, and they do not merit imposing the harsh penalty of dismissal.

ORDER

IT IS ORDERED that defendants' motion to dismiss, Dkt. 23, is DENIED.

Entered September 12, 2022.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge